# 22-3142

# United States Court of Appeals

*for the*

# Second Circuit

FRED LEE, ANNE LEE,

*Plaintiffs-Appellees,*

– v. –

UNION MUTUAL FIRE INSURANCE COMPANY,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLANT

HURWITZ FINE P.C.
Agnieszka Wilewicz, Esq.
Brian D. Barnas, Esq.
Eric T. Boron, Esq.
*Attorneys for Defendant-Appellant*
1300 Liberty Building
Buffalo, New York 14202
(716) 849-8900

# TABLE OF CONTENTS

Table of Authorities ................................................................................ ii

Argument.............................................................................................3

   I.     PLAINTIFFS WERE NOT ENTITLED TO SUMMARY
          JUDGMENT BELOW BECAUSE THEY MADE A
          MISREPRESENTATION IN RESPONSE TO A CLEAR
          AND UNAMBIGUOUS APPLICATION QUESTION ............................3

          A. The Court Below Erred in Finding that the Question
             How Many Apartment Units Are There was Ambiguous....................3

          B. The Lees' Claims of Ambiguity are Particularly
             Unpersuasive Given that Plaintiffs Never Reviewed
             the Application Question at Issue ........................................8

          C. Plaintiffs Made a Clear Misrepresentation when they
             Disclosed Only Two Apartment Units on their
             Application for Insurance......................................................9

          D. Union Mutual has Established that Plaintiffs' Misrepresentation
             About the Number of Apartments was Material ................................12

   II.    PLAINTIFFS HAVE FAILED TO SHOW THAT UNION
          MUTUAL IS ESTOPPED FROM RESCINDING THE POLICY .........15

   III.   PLAINTIFFS' PURPORTED TECHNICAL AND
          EVIDENTIARY ARGUMENTS ARE UNSUPPORTED
          AND UNSUBSTANTIATED ................................................17

Conclusion ........................................................................................21

# TABLE OF AUTHORITIES

*Belt Painting Corp. v. TIG Ins. Co.*,
100 N.Y.2d 377, 795 N.E.2d 15, 763 N.Y.S.2d 790 (2003)....................................5

*Brandon v. Kinter*,
938 F.3d 21, 33 n.9 (2d Cir. 2019)...................................................................18

*Burt Rigid Box v. Travelers Prop. Cas. Corp.*,
302 F.3d 83, 95 (2d Cir. 2002)........................................................................15

*Castlepoint Ins. Co. v. Jaipersaud*,
127 A.D.3d 401, 4 N.Y.S.3d 498 (1st Dept. 2015) ..........................................11

*City of New York v. Evanston Ins. Co.*,
39 A.D.3d 153, 830 N.Y.S.2d 299 (2d Dept 2007) ............................................5

*Dauria v. CastlePoint Ins. Co.*,
104 A.D.3d 406, 960 N.Y.S.2d 105 (1st Dept. 2013) ............................... 3-4, 9, 11

*Estate of Gen Yee Chu v. Otsego Mut. Fire Ins. Co.*,
148 A.D.3d 677, 49 N.Y.S.3d 468 (2d Dept. 2017) ..........................................10

*Fanger v. Manhattan Life Ins. Co.*,
273 A.D.2d 438, 709 N.Y.S.2d 622 (2d Dept 2000). ..........................................9

*Fed. Deposit Ins. Corp. v. Murex LLC*,
500 F. Supp. 3d 76 (S.D.N.Y. 2020) ..........................................................18, 19

*Hermitage Ins. Co. v. LaFleur*,
100 A.D.3d 426, 953 N.Y.S.2d 209 (1st Dept. 2012) ......................................10

*In re Ambassador Group, Inc. Litig.*,
738 F. Supp. 57 (E.D.N.Y. 1990) ......................................................................2

*In re TFosamax Prod. Liab. Litig.*,
707 F.3d 189 (2d Cir. 2013)............................................................................18

*International Multifoods Corp. v. Commercial Union Ins. Co.*,
309 F.3d 76 (2d Cir. 2002)................................................................................4

*Kiss Const. N.Y., Inc. v. Rutgers Cas. Ins. Co.*,
61 A.D.3d 412, 877 N.Y.S.2d 253 (1st Dept. 2009) ................................................13

*Konstantakopoulous v. Union Mut. Fire Ins. Co.*,
194 A.D.3d 572, 144 N.Y.S.3d 346 (1st Dept. 2021) .......................................14, 15

*Lema v. Tower Ins. Co. of N.Y.*,
119 A.D.3d 657, 990 N.Y.S.2d 231 (2d Dept. 2014) .......................................9 , 11

*Moreno-Godoy v. Kartagener*,
7 F.4th 78, 87 n.4 (2d Cir. 2021) ..........................................................................19

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*,
17 F. Supp. 3d 323 (S.D.N.Y. 2014) .................................................................. 5-6

*Rojas v. Roman Catholic Diocese of Rochester*,
660 F.3d 98 (2d Cir. 2011)....................................................................................19

*Si Meat Vill., Inc. v. Amguard Ins. Co.*,
208 F. Supp.3d 490 (E.D.N.Y. 2016) ....................................................................15

*Tower Ins. Co. of N.Y. v. Atuana*,
127 A.D.3d 454, 4 N.Y.S.3d 523 (1st Dept. 2015) ...............................................10

*2900 Stillwell Ave. v. U.S. Underwriters Ins. Co.*,
172 A.D.3d 1143, 98 N.Y.S.3d 877 (2d Dept. 2019) .............................................13

*United States Underwriters Ins. Co. v. ITG Dev. Grp., LLC,*
294 F. Supp. 3d 18 (E.D.N.Y. 2018) ......................................................................20

*World Trade Ctr. Props. v. Hartford Fire Ins. Co.,*
345 F.3d 154 (2d Cir. 2003)...............................................................................1, 4

<u>Statutes and Other Citations</u>

Fed R. Evid. 803(6)...............................................................................................20

New York Insurance Law § 3105 ...........................................................................13

**SUMMARY OF UNION MUTUAL'S REPLY**

An ambiguity in a contract only exists where there are two *reasonable* possible interpretations of a term therein. Indeed, as cited by Union Mutual's Defendant-Appellant's Brief, filed March 23, 2023 (hereafter "Appellant's Brief"), an "ambiguity" only exists when a contract term suggests "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *World Trade Ctr. Props. v. Hartford Fire Ins. Co.,* 345 F.3d 154, 184 (2d Cir. 2003).

Plaintiffs' Brief makes no attempt to dispute this established legal principle. Indeed, the Plaintiffs have failed to show there were two competing reasonable interpretations of the insurance application question at issue. For this reason alone, this Honorable Court should reverse the District Court's errant holding. It is clear upon the record that the simple, straightforward application question ("How many apartment units are there?") was unambiguous.

The District Court erred in holding the application question to be "ambiguous." Ambiguity "is not to be judged from the viewpoint of an easily befuddled or misled lay consumer, but rather, by the understanding of a person

engaged in the insured's course of business," which here is indisputably real estate investing. *In re Ambassador Group, Inc. Litig.*, 738 F. Supp. 57, 63 (E.D.N.Y. 1990). The District Court's mistaken finding of "ambiguity" in the application question was the sole basis for the District Court's grant of summary judgment to the Plaintiffs on their breach of contract cause of action and for denial of Union Mutual's competing motion for summary judgment. Plaintiffs' Brief fails to show any reasonable interpretation of the insurance application question was made by the Plaintiffs at the time the application was submitted, and their other arguments fail to show that Union Mutual should not have been granted summary judgment.

It was thus error on this record for the District Court to have granted the Plaintiffs summary judgment, and error for the District Court to have denied Union Mutual summary judgment. The errant rulings of the District Court should be corrected by this Court by reversing the mistaken ambiguity holding, reversing the undeserved grant of summary judgment to the Plaintiffs, and reversing the improper denial of Union Mutual's summary judgment motion.

**ARGUMENT**

**I. PLAINTIFFS WERE NOT ENTITLED TO SUMMARY JUDGMENT BELOW BECAUSE THEY MADE A MATERIAL MISREPRESENTATION IN RESPONSE TO A CLEAR AND UNAMBIGUOUS APPLICATION QUESTION**

The District Court erroneously concluded that Union Mutual was not entitled to rescind the insurance policy issued to Plaintiffs. The District Court should have concluded that the application question "how many apartment units are there" was clear and unambiguous. Indeed, in their Appellee's Brief, Plaintiffs fail to offer two reasonable competing interpretations of this question. An Apartment is a separate part of a building that has its own kitchen, bathroom, and separate entrance, and the record in this case shows that there were three such units at Plaintiffs' property. Plaintiffs' argument that the use of the property is determinative as to the number of units is not supported by the applicable case law. Union Mutual has also established through the Affidavit of its underwriter and underwriting guidelines that Plaintiffs' misrepresentation was material, and Plaintiffs' argument to the contrary fails for the reasons discussed below.

**A. The Court Below Erred in Finding the Question How Many Apartment Units Are There was Ambiguous**

There is no ambiguity in the application question at issue. An apartment is a separate part of a building that has its own kitchen, bathroom, and separate entrance. *See Dauria v. CastlePoint Ins. Co.*, 104 A.D.3d 406, 407, 960 N.Y.S.2d 105 (1st

Dept. 2013). Plaintiffs have failed to demonstrate there were two reasonable competing interpretations of the question "how many apartment units are there" on the application for insurance, and the District Court erred in finding that the question was ambiguous.

The standard for analysis of potential ambiguity of a commercial insurance application question is well established, and it does not include comparing dictionary definitions of the words that make up the application question at issue. Rather, the analysis focuses upon the question of whether or not there is more than one meaning of an application question "when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *World Trade Ctr. Props. v. Hartford Fire Ins. Co.,* 345 F.3d 154, 184 (2d Cir. 2003). Indeed, it is well established that consideration of a claim of "ambiguity" must be determined "from the viewpoint of a reasonably intelligent person who has examined the context of the entire agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *International Multifoods Corp. v. Commercial Union Ins. Co*., 309 F.3d 76, 83 (2d Cir. 2002).

Plaintiffs' Brief does not and cannot controvert the Defendant-Appellant Brief's proper reliance upon the following applicable and pertinent New York law:

4

"[I]nsurance contracts are to be interpreted according to the reasonable expectations and purposes of ordinary business people when making ordinary business contracts." *City of New York v. Evanston Ins. Co.*, 39 A.D.3d 153, 156, 830 N.Y.S.2d 299 (2d Dept 2007). Courts should "read an insurance policy in light of 'common speech' and the reasonable expectations of a businessperson." *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383, 795 N.E.2d 15, 763 N.Y.S.2d 790 (2003).

Here, it is undisputed that the Plaintiffs were applying for commercial insurance coverage for their investment property. The record shows the Plaintiffs have at all times rented apartments in the building to tenants and are thus businesspersons seeking to profit from their real estate investment business. (A-327, lines 15-18; A-356, lines 18-24). This Court's analysis of the commercial insurance application question at issue must involve reading the question in light of common speech, as well as applying the reasonable expectations of a businessperson, in the context of the customs, practices, usages and terminology as generally understood in the particular business of insuring real estate investment properties.

When this Court applies such an analysis, it must conclude that the application question at issue was asking the Lees to disclose the total number of apartments in the building, not just the occupied apartments or legal apartments. The application question asking, "How many apartment units are there?" includes neither the word "occupied" nor the word "legal", or any reference to "in use." *See Newman Myers*

5

*Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 327-28 (S.D.N.Y. 2014) ("where the provisions of a policy are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement"). Plaintiffs assert in their Brief that the application question can be read as inquiring only about apartments that are "legal" and "occupied." However, and notably, the short, straightforward application question at issue references neither of these issues. Plaintiffs cannot read words into the application question at issue to create ambiguity where none exists.

Further, Plaintiffs miss the mark with their unfounded contention that a comparison of two differently worded dictionary definitions of the word "apartment" is somehow a "fatal blow" to Union Mutual's argument. Surely, it cannot be reasonably disputed that the terms "apartment" and "apartment unit" are commonly used terms in the business world of real estate owners and investors. The existence of slightly differing wording of the dictionary definitions of the term does not change this fact. Unsurprisingly, Plaintiffs cannot point to a single case where a court (State or Federal) found that multiple dictionary definitions of a term led to a finding of ambiguity. Plaintiffs' Brief fails to show there is any reasonable interpretation to be made by a real estate investor other than that an apartment is a place capable of someone residing there.

Tellingly, nothing in Plaintiffs' Brief even addresses the fact that the owner Mr. Lee himself repeatedly used the words "apartment" and "unit" and the phrase "apartment unit" when giving answers to questions posed at his deposition and throughout his affidavit. If the terms "apartment" and "apartment unit" as used in the application question were so ambiguous and unable to be understood by the insured, then surely Mr. Lee would not have used them as he repeatedly did himself. Clearly, Mr. Lee understood what the terms "apartment" and "apartment unit" meant, as they are used daily in the real estate ownership and investment world of the Plaintiffs. Indeed, there simply are no two separate, competing meanings of the term.

Likewise, Plaintiffs' assertion that Union Mutual purportedly "conceded" that the term apartment unit can be interpreted "in a number of ways" is without support. The deposition testimony of James Lambert did not make any such concession. Rather, Mr. Lambert's testimony is that "it's a very clear question how many apartments were in the building", and that "I think the question is clear how many apartments were in the building." (A-90). His response to a question about interpreting things in a number of ways is a generality about how anything can be interpreted that was not specifically limited to the question posed.

The questioning of Mr. Lambert by the Plaintiffs' attorney about the terms "apartment" and "apartment unit" is not limited to the A-89-90 pages cherry-picked

7

by the Plaintiffs' Brief. The questions on the topics of the terms apartment and apartment unit begin at A-86 of the record and continue through A-91. Mr. Lambert testified that the Application for Commercial Insurance asks about the number of apartment units in a risk when a quote is being requested "because the number of units will have a significant impact on the pricing of the premium." (A-87, lines 2-4). In addition, Mr. Lambert testified, "[T]he premium we are required to charge by New York State is a function of the number of apartments," in explaining why the question about the number of apartment units is asked. (*Id.*, lines 9-11).

In sum, there is absolutely no basis for this Court to find that Union Mutual concedes that the phrase apartment unit in the application question at issue can be interpreted in a number of ways. Rather, this Court should find, as is true, that there is no ambiguity in the application question at issue.

### B. The Lees' Claims of Ambiguity are Particularly Unpersuasive Given that Plaintiffs Never Reviewed the Application Question at Issue

Plaintiffs' claim of ambiguity falls particularly flat in this case considering that the record here conclusively establishes that the Plaintiffs never even saw the application question at issue. Accordingly, it is impossible that there could have been two competing reasonable interpretations of the application question at the time it was asked. It is uncontroverted that the Plaintiffs never viewed the application question at issue before the answer to it was submitted by their broker and the Plaintiffs therefore had no viewpoint or understanding at all of the application

question at issue, much less a reasonable competing one. Simply, Mr. Lee never even saw, much less interpreted the application question, at the time the application was submitted.

Given Plaintiffs' lack of involvement in preparing the application, there was no basis for the District Court to have applied as precedent the holdings of New York courts in life insurance application cases such as *Fanger v. Manhattan Life Ins. Co.*, 273 A.D.2d 438, 709 N.Y.S.2d 622 (2d Dept 2000).

The life insurance application question cases are plainly distinguishable from this case concerning interpretation of a commercial package insurance policy application. In contrast to this matter, the applicants for the life insurance policies in the life insurance application cases actually reviewed and interpreted the life insurance application questions ultimately held to be ambiguous. Thus, there can be no comparison between those cases and here where the Lees did not review the application that they now belatedly claim was ambiguous.

## C. Plaintiffs Made a Clear Misrepresentation when they Disclosed Only Two Apartment Units on their Application for Insurance

New York law holds that an apartment is a separate portion of a building that has its own kitchen, bathroom, and separate entrance. *Lema v. Tower Ins. Co. of N.Y.*, 119 A.D.3d 657, 990 N.Y.S.2d 231 (2d Dept. 2014); *Dauria v. CastlePoint Ins. Co.*, 104 A.D.3d 406, 407, 960 N.Y.S.2d 105 (1st Dept. 2013). Plaintiffs answer on their application that there were only two apartment units was thus a

misrepresentation because there were, in fact and admittedly, three apartment units at the premises.

Under the established case law, there is simply no basis for Plaintiffs' position that they only had to disclose "legal" apartments on their application for insurance. Indeed, this very position has been rejected repeatedly by New York courts. *See Hermitage Ins. Co. v. LaFleur*, 100 A.D.3d 426, 427, 953 N.Y.S.2d 209 (1st Dept. 2012) ("while the third apartment may have been constructed illegally, the building is nevertheless a three-family dwelling"); *see also Estate of Gen Yee Chu v. Otsego Mut. Fire Ins. Co.*, 148 A.D.3d 677, 49 N.Y.S.3d 468 (2d Dept. 2017) (finding testimony that house was a legal two-family was irrelevant to determination of how many units there were); *Tower Ins. Co. of N.Y. v. Atuana*, 127 A.D.3d 454, 454, 4 N.Y.S.3d 523 (1st Dept. 2015) (finding that City documents indicating building was only a two-family dwelling were irrelevant to question of how many units were in the building).

It is also not reasonable to believe an applicant for commercial insurance on investment property need only disclose the number of "occupied" apartments in the building at the time of application, as the Lees argue. Plaintiffs' attempts to escape this point by arguing that the use of the property is determinative is entirely unpersuasive and unsupported by the case law. An apartment unit that is structurally

configured as an apartment does not cease to be an apartment simply because it is not occupied.

This point is demonstrated perfectly by the decision of the First Department in *Dauria*. There, the insureds argued that their response of two to the question about the number of families at the insured property was accurate because they used the property as one household. *Dauria*, 104 A.D.3d at 407. The Appellate Division rejected this use-based argument and held that the property had three separate units. *Id.* The court reasoned that even if the property was being used as a single household, "the premises is a three family dwelling because of its structural configuration, i.e. three separate units, each with its own kitchen, bathroom and separate entrance." *Id.*

If, as the Plaintiffs suggest, the use of the property was a determinative part of the analysis, the Appellate Division could not have found as it did in *Dauria*. That decision makes the rule clear: how many units are in a building is determined by the structural configuration of the building, not how the property is used. *See also Lema*, 119 A.D.3d at 658 ("the subject premises was a three-family dwelling based on its structural configuration").

Even the *Jaipersaud* case relied upon by Plaintiffs holds that the structural configuration (and not use) is how the number of units is determined. *Castlepoint Ins. Co. v. Jaipersaud*, 127 A.D.3d 401, 4 N.Y.S.3d 498 (1st Dept. 2015). There, the First Department found that Castlepoint had established, through evidence regarding

the "structural configuration" of the property, that it was a three-family rather than a two-family. *Id.* at 401. The Appellate Division made this conclusion without any consideration of the *use* of the property. The court only turned to consideration of use in response to the insured's request for the court to take judicial notice of the certificate of occupancy. *Id.* The First Department did not, as the Lees seek to do in this case, find that the property must be structurally configured and always used as a three unit building to be considered to be three units. Rather, the court determined that Castlepoint had met its burden of showing the property was a three unit building by providing evidence of the structural configuration alone.

Since Plaintiffs' property was indisputably structurally configured as three separate apartment units, their representation on the application for insurance that there were only two units was a simple misrepresentation, and Union Mutual should have been granted summary judgment.

**D.      Union Mutual has Established that Plaintiffs' Misrepresentation About the Number of Apartments was Material**

Once this Court finds that Plaintiffs made a misrepresentation in response to an unambiguous application question, it should next conclude that misrepresentation was material. Plaintiffs' Brief did not and cannot refute the undisputed evidence in the record demonstrating that the Plaintiffs' misrepresentation was material. The pertinent facts set forth in the Lambert Affidavit, A-765-779, support this. Union Mutual's independent adjuster that was sent to inspect and examine the building after

the fire reported that "an apartment does exist in the basement area". (A-772, ¶45, and Ex. 5 of the Lambert Affidavit). It is uncontroverted that the commercial insurance policies would not have been issued to the Plaintiffs for the premium amounts charged if Union Mutual had been accurately advised the building actually had three units rather than two units. (A-776, ¶¶64-70, and Ex. 9 of the Lambert Affidavit, the Underwriting Guidelines). Intent to misrepresent is not an element of the analysis; the mere existence of the misrepresentation is. New York Insurance Law § 3105.

Plaintiffs' argument that Union Mutual has not established the materiality of their misrepresentation is unavailing. As the Plaintiffs are forced to acknowledge, documentary evidence concerning an insurer's underwriting practices showing that same policy would not have been issued if the correct information had been provided in the application is sufficient to establish materiality. *2900 Stillwell Ave. v. U.S. Underwriters Ins. Co.*, 172 A.D.3d 1143, 1144, 98 N.Y.S.3d 877 (2d Dept. 2019). An insurer's underwriting guidelines are routinely held to be sufficient documentary proof to establish an insurer's underwriting practices. *Kiss Const. N.Y., Inc. v. Rutgers Cas. Ins. Co.*, 61 A.D.3d 412, 414, 877 N.Y.S.2d 253 (1st Dept. 2009).

Here, Union Mutual submitted its underwriting guidelines, which demonstrate that a higher premium would have been charged if the Plaintiffs had accurately disclosed that there were three apartment units. (A.-775-776 at ¶ 64, A-1124-1127).

This is sufficient to establish materiality. Union Mutual was not required to define every word used in the application in its underwriting guidelines to establish its right to rescind, as the Plaintiffs' Brief misguidedly suggests. Rather, the standard unambiguous language and understanding applies. The evidence submitted is clear: if the Plaintiffs had accurately disclosed there were three apartments, they would have been issued a different policy with a higher premium. This is what is required to establish materiality under New York law.

This conclusion is made indisputable by the First Department's holding in *Konstantakopoulous v. Union Mut. Fire Ins. Co.*, 194 A.D.3d 572, 144 N.Y.S.3d 346 (1st Dept. 2021). There, the Appellate Division held that the insured's representation on his application for insurance that there were three apartment units at the property was material where there were actually four apartment units. *Id.* at 573. Notably, the First Department held that the exact same underwriting guidelines submitted by Union Mutual on this appeal were sufficient to establish its right to rescind based upon a unit count misrepresentation. *See id.*[1] If, as the Plaintiffs suggest, the failure to define the single word "apartment" in the underwriting guidelines was some fatal flaw in Union Mutual's proof of materiality, then surely

---

[1] The Underwriting Guidelines submitted by Union Mutual in support of its motion can be found in the Record on Appeal can be found on NYSCEF under Appellate Division Index Number 2020-03339 at Doc. No. 4 page R 33-36.

the First Department could not have reached the conclusion it did in *Konstantakopoulous*.

Based upon the foregoing, Union Mutual has demonstrated that the Plaintiffs' misrepresentation on their application for insurance regarding the number of apartment units was material because it would not have issued the same policy if the truth had been known. Accordingly, this Court should reverse the decision of the District Court, grant Union Mutual's motion for summary judgment, and deny the Plaintiffs' summary judgment motion.

## II. PLAINTIFFS HAVE FAILED TO SHOW THAT UNION MUTUAL IS ESTOPPED FROM RESCINDING THE POLICY

Plaintiffs' assertion that Union Mutual "is estopped from rescinding the policy" is utterly unfounded as it is based upon completely unproven and untrue factual assertions.

Estoppel arises only where an insurer acts in a manner inconsistent with a lack of coverage and the insured reasonably relies on those actions to its detriment. *Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002). An insurer's conduct may constitute estoppel only where the insurer has full knowledge of the facts. *Si Meat Vill., Inc. v. Amguard Ins. Co.*, 208 F. Supp.3d 490, 493 (E.D.N.Y. 2016).

Here, Union Mutual did not have any knowledge, much less full knowledge, that the Plaintiffs had made a misrepresentation on their application for insurance

until after the fire claim was submitted. Contrary to the Plaintiffs' unsupported claims, there is no evidence that Union Mutual conducted an inspection of the basement or knew of the presence of the additional apartment at the time of the underwriting inspection.

Plaintiffs' Brief repeatedly asserts, without any proof, that Union Mutual conducted an inspection of the basement apartment. However, and notably, the statement made in the Plaintiffs' Brief that, "Union Mutual had actual knowledge of the basement before the Policy was issued in July of 2017", is not followed by any citation to the Appendix or any page of the record on appeal.

In support of their claim that Union Mutual inspected the basement Plaintiffs generally cite, without further specifics, pages A-75; 77; and 173-77 of the record. However, none of the inspection photos that make up pages A-173-177 of the record depict the basement apartment. This comports with the deposition testimony of Mr. Lambert that it was only upon investigating the Plaintiffs' fire loss claim years later that Union Mutual learned there was an apartment in the basement. (A-771-774; paragraphs 40-56).

Indeed, after the fire in 2020, the independent adjuster Beltrani Consultants, Inc. ("BCI") inspected the building and thereafter reported that the building contained not only a first-floor apartment and a second-floor apartment, but critically, a third apartment in the basement of the building (that was previously

never disclosed). (A-772 at ¶¶42-45, A-1077). BCI reported that it observed a separate entrance to the basement area, as well as a living area, a bedroom, a full bath, and a kitchen area, and that while the basement did not appear to be occupied at the time of BCI's post-fire inspection, an apartment did clearly exist in the basement area. (*Id.*)

The citations of the Plaintiffs' Brief to pages A-75 and A-77 of the record are similarly immaterial. Nowhere on page A-75 or A-77 of the record is there any testimony indicating, much less evidencing, that the inspector ever even entered the basement apartment at the building. There is simply no basis for this Court to find that Union Mutual's inspector "conducted an inspection of the basement."

Since Union Mutual did not learn there was a third apartment in the basement until after the fire, years after the application for insurance, Plaintiffs' argument that Union Mutual is estopped from rescinding the policy fails.

## III. PLAINTIFFS' PURPORTED TECHNICAL AND EVIDENTIARY ARGUMENTS ARE UNSUPPORTED AND UNSUBSTANTIATED

Finally, unable to demonstrate that the application was ambiguous or that Union Mutual is otherwise unable to rescind the policy, Plaintiffs turn to a series of purported technical and evidentiary arguments that miss the mark. Plaintiffs' contention that the Lambert Affidavit is a "sham affidavit" is utterly unfounded. The District Court did not find it to be a "sham affidavit", and neither should this Court.

Mr. Lambert's affidavit in support does not contradict his deposition testimony, which was given a number of months before he signed his affidavit in support. Certainly, in the interval of time between his deposition testimony and his signing of his affidavit in support, he is entitled to review the claim file materials and refresh his recollection of all the specific facts of the claim and its investigation. There is nothing improper about this, nor does it change the facts.

The "sham affidavit" doctrine "prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony." *In re TFosamax Prod. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013); *see also, e.g.*, *Brandon v. Kinter*, 938 F.3d 21, 33 n.9 (2d Cir. 2019).

Here, the Lambert Affidavit was submitted in support of Union Mutual's own motion for summary judgment, and thus the doctrine cannot apply in the matter at hand. In addition, the Second Circuit "has declined to disregard an affidavit as a sham in cases where there is a readily apparent, plausible explanation for the inconsistency, or where the deposition is only arguably contradictory to the affidavit." *Brandon*, 938 F.3d at 33 n.9 (declining to apply sham affidavit doctrine where a witness stated in deposition that he had been served pork "multiple" times and specified in the later statement the number of times he had been served pork); *see also, e.g.*, *Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 95 (S.D.N.Y. 2020). "[I]f there is a plausible explanation for discrepancies in a party's

testimony, the court ... should not disregard the later testimony because an earlier account was ambiguous, confusing, or simply incomplete." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) (internal quotation marks omitted).

Likewise, where "a declarant's prior testimony and summary judgment declaration are not in direct contradiction, mere tensions or inconsistencies go to credibility, not admissibility, and credibility determinations are not proper at summary judgment." *Fed. Deposit Ins. Corp.*, 500 F. Supp. 3d at 95. Moreover, "when earlier testimony is contradicted by evidence other than the deponent's subsequent affidavit, the concern that the proffered issue of fact is a mere sham is alleviated." *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 87 n.4 (2d Cir. 2021) (internal quotation marks and alterations omitted).

Plaintiffs' Brief demonstrably fails to show the Lambert Affidavit contradicts or changes his testimony about any applicable or pertinent fact of this matter. As such, Plaintiffs' argument that the Lambert Affidavit should be disregarded as a sham affidavit must be rejected.

In addition, the Plaintiffs' argument that BCI's report is inadmissible hearsay is without merit. The report unquestionably is admissible as a business record of the insurer under the business record exception. Fed R. Evid. 803(6).

The Eastern District of New York's decision in *ITG Development* shows that the BCI report is admissible here. *See United States Underwriters Ins. Co. v. ITG Dev. Grp., LLC,* 294 F. Supp. 3d 18 (E.D.N.Y. 2018). There, Underwriters obtained a report from ICS Claims as part of its investigation of the underlying claim. *Id.* at 25. The report was submitted in support of Underwriters' motion for summary judgment, and the defendant argued that it was not admissible. *Id.*

The Eastern District concluded the claim report was admissible as a business record under Rule 803(6). *Id.* at 29. Underwriters' claim representative swore by way of affidavit that the report was created and/or maintained by Underwriters as part of its business, and the court noted that insurance companies routinely create investigative reports for claims as a regular part of business. *Id.* The court also noted that the report there, like the BCI report here, was created contemporaneously with its purpose of investigating the claim. *Id.* Additionally, the court also found that the information in the report documented attempts to gather information in the ordinary course of evaluating a claim, and there was no challenge to the accuracy of the statements in the report. *Id.*

Here, like in *ITG Development*, Plaintiffs' argument that the BCI report is not admissible should be rejected. As the Lambert Affidavit states, BCI's reports and photographs are "business records of Roundhill and of Union Mutual made at or near the fire loss date, and stored electronically by Roundhill for Union Mutual in

the ordinary course of Roundhill's business, it being the regular practice of Roundhill to make and create such electronic records of such reports." (A-772-774; ¶¶45-54, and 5, 6, and 7 of the Lambert Affidavit). The BCI report was clearly obtained by Union Mutual in the ordinary course of its business in the investigation of Plaintiffs' fire claim. Moreover, Plaintiffs have provided no actual basis for contesting the accuracy of the report, which includes photographs depicting the basement apartment.

Accordingly, the BCI report submitted by Union Mutual was and is properly before the Court on this motion as a business record.

## CONCLUSION

On a *de novo* review of the competing motions of the parties, the District Court's rulings on the competing summary judgment motions of the parties as to the Plaintiffs' breach of contract claim should be reversed. This Court must rule that the District Court erred in holding "ambiguous" the straightforward commercial insurance application question asking, "How many apartment units are there?" Moreover, because as shown by the Union Mutual Defendant-Appellant's Brief the Defendant-Appellant Union Mutual did meet its burden for obtaining summary judgment on the breach of contract issue, while the Plaintiffs never did, respectfully this Court must grant Union Mutual summary judgment and direct the District Court to dismiss Plaintiffs' case in its entirety.

DATED:  May 15, 2023
        Buffalo, New York                HURWITZ FINE, P.C.

By:_____

    Agnieszka A. Wilewicz, Esq.
    Brian D. Barnas, Esq.
    Eric T. Boron, Esq.
    HURWITZ FINE, P.C.
    *Attorneys for Defendant-Appellant*
    *Union Mutual Fire Insurance*
    *Company*
    The Liberty Building
    424 Main Street, Suite 1300
    Buffalo, New York 14202
    (716) 849-8900

## CERTIFICATE OF COMPLIANCE

I hereby certify that the Reply Brief of the Defendant-Appellant Union Mutual Fire Insurance Company complies with the type-volume limitation of FRAP 32(a)(7)(B)(ii) of 6,500 words for a reply brief printed with 14 point proportionally spaced type face in that it contains 4,923 words as counted by the word processing program which was used to draft this brief.

DATED: May 15, 2023
Buffalo, New York

HURWITZ FINE, P.C.

By:_____
Agnieszka A. Wilewicz, Esq.
Brian D. Barnas, Esq.
Eric T. Boron, Esq.
HURWITZ FINE, P.C.
*Attorneys for Defendant-Appellant*
*Union Mutual Fire Insurance*
*Company*
The Liberty Building
424 Main Street, Suite 1300
Buffalo, New York 14202
(716) 849-8900